UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL CHARLES LONGSHORE,

    Plaintiff,
v.                                                             Case No. 8:21-cv-2108-AAS

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration,

    Defendant.
_____/

## ORDER

    Michael Charles Longshore requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying his claim for Supplemental Security Income (SSI) and disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, and the parties' joint memorandum, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

    Mr. Longshore applied for SSI and DIB on June 10, 2019, and alleged disability beginning on April 1, 2019. (Tr. 59–82). Disability examiners denied Mr. Longshore's applications initially and after reconsideration. (Tr. 81–82, 123–124). At Mr. Longshore's request, the ALJ held a hearing on November 9,

1

2020. (Tr. 31–58). The ALJ issued an unfavorable decision to Mr. Longshore on January 29, 2021. (Tr. 13–30).

On July 8, 2021, the Appeals Council denied Mr. Longshore's request for review, making the ALJ's decision final. (Tr. 1–7). Mr. Longshore requests review of the Commissioner's final decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Mr. Longshore was twenty-eight years old on his alleged onset date of April 1, 2019, and on the date he applied for SSI and DIB, June 10, 2019. (Tr. 59, 70). Mr. Longshore has some college education and past relevant work as a security guard. (Tr. 68, 79).

### B. Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity,[2] he is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit his physical or mental ability to perform

---

[1] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. §§ 404.1572, 416.910.

2

basic work activities, he has no severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, he is not disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[3] *Id.* Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from performing work that exists in the national economy, he is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The ALJ determined Mr. Longshore did not engage in substantial gainful activity since April 1, 2019. (Tr. 18). The ALJ found Mr. Longshore had these severe impairments: bipolar disorder, depression, neurocognitive disorder, and anxiety. (*Id.*). But the ALJ concluded none of Mr. Longshore's impairments or any combination of his impairments met or medically equaled the severity of an impairment in the Listings. (Tr. 19).

---

[3] A claimant's RFC is the level of physical and mental work he can consistently perform despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The ALJ found Mr. Longshore had the RFC to perform with the following non-exertional limitations:

> [Mr. Longshore] must avoid exposure to hazardous machinery; must not climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; and limited to simple, routine, repetitive tasks requiring no complex instructions.

(Tr. 20–21).

Based on these findings and the testimony of a vocational expert (VE), the ALJ determined Mr. Longshore could not perform his past relevant work. (Tr. 25). The ALJ then determined Mr. Longshore could perform other jobs existing in significant numbers in the national economy, specifically as a kitchen helper, marker, and bagger. (Tr. 24–25). As a result, the ALJ found Mr. Longshore not disabled from April 1 2019, through the date of the ALJ's decision, January 29, 2021. (Tr. 26).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be

sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B.  Issue on Appeal

Mr. Longshore raises two arguments on appeal: (1) the Commissioner did not properly evaluate Trent Mascola, D.O.'s September 30, 2020 medical opinion (Doc. 21, pp. 13–20); and (2) the Commissioner did not properly evaluate Daniel Van Ingen, Psy.D.'s February 14, 2020 medical opinion and Christine F. Svenson, APRN's August 17, 2019 medical opinion. (*Id.* at 30–34).

5

The Commissioner contends substantial evidence supports the ALJ's conclusions. (*Id.* at 20–30, 34–37). The court will address each argument in turn.

### A. Dr. Mascola's Medical Opinion

Dr. Mascola conducted a Medical Source Assessment of Mr. Longshore on September 30, 2020. (Tr. 518–520). In pertinent part, Dr. Mascola concluded Mr. Longshore had "mild to moderate limitations in understanding and memory, mild to moderate limitations in sustained concentration and persistence, mild limitations in social interaction, except a moderate limitation in adhering to basic standards of neatness and cleanliness, and mild limitations in adaptation." (Tr. 24) (*citing* (Tr. 518–520)).

The ALJ concluded Dr. Mascola's assessment of Mr. Longshore's mental impairments was persuasive because it aligned with other medical evidence in the record. (Tr. 24). The ALJ specifically noted the consistency of Dr. Mascola's findings of mild to moderate mental limitations with the conclusions of state agency psychological consultants Byron Pack, Psy.D., and Lawrence Annis, Ph.D., who both determined Mr. Longshore had a "moderate limitation in understanding, remembering or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and, a mild limitation in adapting or managing oneself." (Tr. 24) (*citing* (Tr. 66–67, 77–78)). The ALJ also noted a medical report from

6

Ronald Aung-Din, M.D., wherein Dr. Aung-Din reduced Mr. Longshore's daily dosage of Prozac by 50%. (Tr. 24) (*citing* (Tr. 477)).

Mr. Longshore argues the ALJ's conclusion that Dr. Mascola's September 30, 2020 medical assessment was persuasive is not supported by substantial evidence. (Doc. 21, p. 13). Mr. Longshore claims "[t]he ALJ failed to realize that the form completed by Dr. Mascola utilized a different definition for 'moderate' than that used by the Social Security Administration." (*Id*.).

The term "moderate" as used by the ALJ in his opinion is defined as a level of functioning that "independently, appropriately, effectively, and on a sustained basis is fair." 20 CFR Part 404, Subpart P, Appendix 1, § 12.00F. The term "moderate" as used in Dr. Mascola's assessment, by contrast, means the examinee is "able to perform [the] designed task or function, but has or will have noticeable difficulty (distracted from job activity) from 11-20 percent of the work day or work week." (Tr. 519). This distinction is relevant because the VE testified in response to a hypothetical posited during Mr. Longshore's hearing before the ALJ that the "maximum tolerance" an employer under the relevant guidelines would have for a person "being off-task while at work" is "ten percent." (Tr. 53). Thus, Mr. Longshore argues the ALJ erred in concluding Dr. Mascola's assessment was persuasive because the conclusions within Dr. Mascola's assessment would necessitate a finding that Mr. Longshore could not perform a job that exists in significant numbers in the national economy.

7

(Doc. 21, pp. 16–19).

Mr. Longshore's argument relies upon the contention that Dr. Mascola's assessment concluded Mr. Longshore would consistently be distracted from job activity from 11-20 percent of the work day. This is not the conclusion Dr. Mascola reached on Mr. Longshore's capacity to conduct work. Dr. Mascola's assessment concluded Mr. Longshore had "moderate" (as defined by the assessment sheet) limitations in his ability to "[u]nderstand and remember detailed instructions . . . [m]aintain attention and concentration for extended periods of time . . . [w]ork in coordination with or proximity to others without being distracted by them . . . [and a]dhere to basic standards of neatness." (Tr. 519–520).

These specific categories do not indicate Mr. Longshore would be expected to consistently be off-task for 11-20 percent of the work day. Rather, Dr. Mascola's assessment of these three categories suggests Dr. Mascola believes Mr. Longshore would struggle with occupations requiring the completion of complex tasks and instructions. This is apparent when considering the other conclusions Dr. Mascola reached in his assessment of Mr. Longshore.

For example, Dr. Mascola's assessment concluded Mr. Longshore had no limitation on his ability to "[u]nderstand and remember very short, simple instructions . . . [c]arry out very short and simple instructions . . . interact

appropriately with the general public . . . [a]sk simple questions or request assistance . . . [and a]ccept instructions and respond appropriately to criticism from supervisors." (*Id*.). Relatedly, Dr. Mascola concluded Mr. Longshore had only "mild" (defined in the assessment sheet as potentially off-task "no more than 10 percent of the work day") limitations on his ability to "[c]omplete a normal workday and workweek without interruptions from psychological based symptoms" and "[p]erform at a consistent pace without an unreasonable number and length of rest periods." (*Id*.).

These conclusions are consistent with Dr. Pack's and Dr. Annis's medical opinions. (Tr. 66–67, 77–78). The ALJ's conclusion on the persuasiveness of Dr. Mascola's assessment of Mr. Longshore is consistent both with his conclusion on the persuasiveness of Dr. Pack's and Dr. Annis's medical opinions and with the ALJ's RFC determination that Mr. Longshore was limited to performing jobs with "simple routine, repetitive tasks requiring no complex instructions." (Tr. 21).

The ALJ's conclusion on the persuasiveness of Dr. Mascola's assessment of Mr. Longshore is therefore consistent with the VE's testimony, because Dr. Mascola did not conclude Mr. Longshore was incapable of performing a job with simple, short instructions while being off-task less than 10 percent of the time. Substantial evidence thus supports the ALJ's conclusions on the persuasiveness of Dr. Mascola's September 30, 2020 medical opinion.

9

**B. Dr. Van Ingen and APRN Svenson's Medical Opinions**

Dr. Van Ingen conducted a psychological evaluation of Mr. Longshore on February 14, 2020. (Tr. 457–462). Dr. Van Ingen concluded Mr. Longshore was markedly limited or extremely limited in virtually every area of cognitive functioning, including his ability to "understand, remember, or apply simple directions," "use reason and judgment to make work-related decisions," "sustain concentration and perform a task at a consistent pace," and "sustain an ordinary routine and regular attendance at work." (Tr. 461).

APRN Svenson drafted a letter in support of Mr. Longshore's claim of disability on August 17, 2019. APRN Svenson's letter concluded Mr. Longshore is "unable to continue to work" because he is "severely depressed . . . has profound memory lapses [that] have been increasing in frequency and severity . . . [and] issues of impulse control and frustration tolerance have also escalated." (Tr. 435).

The ALJ concluded Dr. Van Ingen's and APRN Svenson's medical opinions were not persuasive. (Tr. 24). The ALJ concluded Dr. Van Ingen's medical opinion was not persuasive because it was inconsistent with the aforementioned medical opinions of Dr. Pack, Dr. Annis, and Dr. Mascola, which showed Mr. Longshore's "mental functioning was consistently reported to be within normal limits." (*Id.*). The ALJ concluded APRN Svenson's medical opinion was not persuasive because it was "vague," was "not clear when or if

10

[APRN Svenson] ever examined or treated [Mr. Longshore]," and addressed an issue (in whether Mr. Longshore was entitled to disability benefits) that is "reserved to the Commissioner." (*Id.*).

Mr. Longshore argues the ALJ improperly concluded APRN Svenson was "not a treating provider" for Mr. Longshore. (Doc. 21, p. 33). Mr. Longshore roots this argument in APRN Svenson's remark to state agency consultant Lawrence Annis, Ph.D. that Mr. Longshore was "a patient in her practice." (*Id.*) (*citing* (Tr. 111)). However, the ALJ in his opinion discusses that he could not confirm APRN Svenson independently treated or examined Mr. Longshore because APRN Svenson refused multiple requests to produce Mr. Longshore's treatment records. (Tr. 23) (*citing* (Tr. 111)). The lack of treatment records provides substantial evidence in support of the ALJ's conclusion that "it is not clear when or if [APRN Svenson] ever examined or treated [Mr. Longshore]." (Tr. 24).

Mr. Longshore further argues "[t]he ALJ's ultimate rejection of Dr. Van Ingen's assessment was improper as it was based in large part on his incorrect presumptions regarding the content of Dr. Mascola's opinion," and a similar error occurred in considering APRN Svenson's medical opinion. (Doc. 21, pp. 30–31). However, as previously discussed, the ALJ did not err in concluding Dr. Mascola's September 30, 2020 medical opinion was persuasive. Thus, the ALJ did not improperly rely upon Dr. Mascola's medical opinion in concluding

11

Dr. Van Ingen's and APRN Svenson's medical opinions were not persuasive.

The remainder of Mr. Longshore's argument in effect asks the court to reweigh the medical evidence in his favor, something this court cannot do. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citations omitted). The ALJ considered the relevant medical evidence and concluded Mr. Longshore had only mild or moderate limitations from his mental impairments. (Tr. 19–20). The ALJ properly considered the medical evidence and substantial evidence supports the ALJ's conclusions.

## IV.   CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**, and the Clerk is directed to enter judgment in favor of the Commissioner.

**ORDERED** in Tampa, Florida on August 29, 2022.

*[signature: Amanda Arnold Sansone]*

AMANDA ARNOLD SANSONE
United States Magistrate Judge